UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ROBERT HILL,

        Plaintiff,           Civil No. 02-CV-10290

v.                                        Hon. David M. Lawson
                                            Magistrate Judge Charles E. Binder

KURTZ GRAVEL COMPANY,

        Defendant,

and                                         **CONSOLIDATED CASES**

MICHAEL ROBERT HILL,

        Plaintiff,           Civil No. 03-CV-10247

v.                                          Hon. David M. Lawson
                                           Magistrate Judge Charles E. Binder

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND,

        Defendant.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT
AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION TO
REVERSE PENSION ADMINISTRATOR'S DECISION OR REMAND,
GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD, AND DISMISSING COMPLAINTS WITH PREJUDICE**

The plaintiff initially filed a *pro se* complaint against his former employer, Kurtz Gravel Company, challenging the denial of pension benefits allegedly due him under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq*. The dispute centers around the plaintiff's employment classification and the number of years of Contributory Service Credit with the Central States, Southeast and Southwest Areas Pension Fund ("Central States") to which the plaintiff was entitled by virtue of his former employment with Kurtz Gravel Company. The plaintiff later filed a second lawsuit against Central States similarly alleging that he has been

denied pension benefits due to him under the terms of his employment. The plaintiff's two lawsuits were consolidated and the case was referred to Magistrate Judge Charles E. Binder under an order for general case management. The plaintiff then retained counsel who filed a motion to reverse the administrator's decision or to remand and permit discovery. Kurtz filed a motion for judgment on the administrative record or in the alternative, for summary judgement, and Central States also filed a motion for judgment on the administrative record. On May 1, 2006, the magistrate judge filed a report recommending that the plaintiff's motion to reverse the administrator's decision or remand and permit discovery be denied; Central States' motion for judgment on the administrative record be granted; and Kurtz's motion for judgment on the administrative record be granted. The plaintiff has filed timely objections to the recommendation, and the matter is presently before the Court for *de novo* review. After reviewing the administrative record and the parties' submissions, the Court concludes that the plaintiff's objections lack merit and the magistrate judge correctly decided the issues. Therefore, the Court will overrule the objections, adopt the recommendation and report, and grant the defendants' motions.

I.

None of the parties objected to the magistrate judge's recitation of the facts, and the Court adopts them. To summarize, the plaintiff began employment with Kurtz in 1979. His formal job classification, of course is the subject of the dispute in this lawsuit, but generally he drove a truck and hauled cement and gravel.

Some of the workers in Kurtz's employ were represented by the Teamsters Union, and beginning in 1955 Kurtz entered into a series of collective bargaining agreements (CBAs) with that union. However, not all workers were covered by the CBAs although through the years successive

CBAs picked up additional classes of workers for coverage. One of the features of the CBA was that Kurtz would be obliged to make contributions on behalf of covered workers to the Central States pension fund. So when the plaintiff's employment with Kurtz ended in 1998, he filed a request for payment of all pension benefits due to him. Central States informed the plaintiff that he was to be credited for his years of service between 1995 and 1998. The Central States pension manager reasoned that the plaintiff was classified as a "bulker/cement hauler driver," which was not a covered position until the CBA that went into effect in April 1995.

The plaintiff believed he should have been classified as a "gravel train driver," which was a covered position beginning with the 1979 CBA. If he were so classified, he would be entitled to approximately sixteen more years of service for his pension credit. The plaintiff filed a series of administrative appeals and presented evidence; all of his appeals were denied, and he filed the present lawsuits. The evidence he presented and other information considered by Central States Claim Review Committee and the Board of Trustees is set forth in the administrative record considered by the magistrate judge.

In support of his argument that he was a gravel train driver, the plaintiff points to an affidavit from a co-worker, Lyman Halberstadt. Halberstadt averred that the plaintiff "at times" performed the same duties as gravel train drivers by hauling gravel, and that the plaintiff was "responsible for performing pick-ups and deliveries for Kurtz." AR at CS 0838. The Board did not find Halberstadt's affidavit to be persuasive because the plaintiff only hauled gravel "at times" and there were several other affidavits (by Kurtz, McCartney, and Schluckbler) stating that the plaintiff was, instead, a cement hauler driver. AR at CS 0793, 0742, 0743. In addition, Kurtz's seniority lists indicate that the plaintiff was a cement hauler, and correspondence from Local 332 refers to the

plaintiff as a cement hauler. AR at CS 0747. The Board also took note that the plaintiff was not similarly situated to Halderstadt because Halderstadt was classified as a gravel train driver on Kurtz's seniority lists. *Ibid.*

Based on this evidence in the record, and applying the arbitrary and capricious standard of review, the magistrate judge concluded that the pension administrator's decision ought to be affirmed.

II.

The plaintiff challenges the denial of benefits under section 502(a)(1)(B) of ERISA, which authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] plan administrator's decision is reviewed 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The parties in this case agree that the standard of review is the arbitrary and capricious standard. This deferential review is appropriate when the ERISA plan at issue, as here, provides a clear grant of discretion to the plan administrator and the decision being appealed was made in compliance with plan procedures. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595, 597 (6th Cir. 2001).

The arbitrary and capricious standard of review "is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's*

*Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotes and citation omitted). When applying this standard, the court must determine whether the administrator's decision was reasonable in light of the available evidence. Although the evidence may be sufficient to support a contrary finding, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision was not arbitrary or capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). A decision reviewed according to this standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (internal quotes and citation omitted).

The plaintiff asserts two main objections: he says that the magistrate judge improperly distinguished *Glascoe v. Central States, Southeast & Southwest Areas Pension Funds*, 35 Fed. Appx. 121 (6th Cir. 2002), which he believes ought to control the outcome here; and he says that the magistrate judge did not properly consider the record evidence because over 300 pages of material supporting the plaintiff's affidavit were ignored and the defendants' affidavits presented to the pension review committee failed to meet the requirements of Federal Rule of Civil Procedure 56(e).

A.

As the magistrate judge observed, both parties rely heavily upon *Glascoe*. In that case, the plaintiff claimed that he was employed as a truck driver for Brown Freight Lines from 1967 to 1991; he was denied pension credit from 1967 to 1973 because the company classified him as a "utility man," which was not covered under the employer's CBA. Applying the arbitrary and capricious

standard, the court found that Central Sates could not have made a reasonable decision based on the evidence contained in the administrative record. *Glascoe*, 35 Fed. Appx. at 124-25. That record was contained evidence presented by the plaintiff, which included: (1) an affidavit from the former president of Brown Freight Lines stating that the plaintiff had worked as a driver from 1967 forward; (2) affidavits from co-workers stating that the plaintiff had worked as a driver from 1967 forward; (3) an affidavit from the plaintiff's union stating that the plaintiff had worked in a CBA-covered job classification since 1967; (4) seniority lists supporting the plaintiff's claim; and (5) an itemized statement of earnings from the Social Security Administration supporting the plaintiff's claims. *Id.* at 122-23.

Evidence supporting the employer's argument that the plaintiff was not covered under the CBA consisted only of an unsigned, un-notarized affidavit from the former company president, which directly contradicted the plaintiff's properly authorized affidavit; and evidence that the plaintiff had not received his chauffeur's license until 1968, an allegation that the court found to be ambiguous at best. *Id.* at 123. In fact, the plaintiff explained that he did not obtain his chauffeur's license until he began to drive routes that were over ten miles long. *Id.* at 124. Finally, the plaintiff also provided evidence that there was no job classification of "utility man" within the company. *Id.* at 123. The court of appeals concluded that the evidence in the administrative record supporting the defendant's claim was limited to non-existent, and it reversed the lower court's judgment in favor of the pension plan. *Id.* at 124-25.

The facts in the instant case are similar to *Glascoe* only in that there is a dispute between the plaintiff and defendant as to the plaintiff's proper job classification over the years. However, the relative strength of the plaintiff's evidence in this case is not nearly as compelling as in *Glascoe*.

In *Glascoe*, there was no dispute that the plaintiff eventually became a truck driver, which was a covered position; the disputed fact was when he stopped being a "utility man," which was not a recognized job classification by that employer, and became a driver. The plaintiff in this case does not argue that Kurtz had no jobs classified as "bulker/cement hauler driver"; rather, he argues that he actually had been performing a completely different job – that of a gravel hauler – since 1979.

The defendants in this case maintained that the plaintiff started as a bulker/cement hauler driver and maintained that position throughout his entire tenure at the company. He became entitled to pension coverage only when a new CBA picked up that job. Unlike Glascoe, the plaintiff's job never changed, only the contracts changed.

To support his claim the plaintiff offered his affidavit, the affidavit of co-worker Halberstadt, and 300 pages consisting mostly of Teamster CBAs. The foundation of the plaintiff's argument includes the plaintiff's statement: "I am uncertain of how Kurtz described my job classification. My duties throughout the period were the same or similar to other employees classified as Gravel Train Drivers and I was an owner-operator. [Because] I performed the same or similar duties as Gravel Train Drivers, I should be covered under the Redi-Mix Agreement." AR at CS 0328-0332.

The plaintiff's affidavit also states that he has been employed by Kurtz since 1979, includes a list of CBAs that plaintiff claims provide him pension coverage because he was an employee of Kurtz and a member of the General Drivers and Helpers Local Union No. 332, and points out that at least one other similarly-situated Kurtz employee, Mr. Halberstadt, was also initially denied "contributory service credit" by Central States until the issue was settled by litigation in Mr. Halberstadt's favor. AR at CS 0328-0332. Halberstadt's affidavit states: "As a gravel train driver

at Kurtz Gravel Company, I am aware of the job duties and responsibilities encompassed by that job classification. Mike Hill performed, at times before 1995, the identical duties as a gravel train driver, and I personally witnessed Mr. Hill performing those duties." AR at CS 0838.

The magistrate judge reasoned that the defendants rationally could afford less weight to the plaintiff's own affidavit because it lacks documentation and there is a possibility that it is only self-serving. The plaintiff provides little evidence of his alleged alternative job classification, and it is not equivalent in quality or quantity as the evidence set forth in *Glascoe*. The evidence the plaintiff offers to support his claim that the work he carried out was identical to that of gravel train driver, a classification covered under the 1979 CBA, consists of two affidavits, his own and Mr. Halberstadt's. Both affidavits state that the plaintiff performed similar or identical duties as gravel train drivers from time to time.

However, the defendants provided evidence to counter the plaintiff' claim that he was a gravel train driver including three affidavits stating that the plaintiff was a cement hauler driver; correspondence with plaintiff's union that refers to him as a broker-cement hauler driver; and various seniority lists that list the plaintiff as a cement hauler driver. AR at CS 0630, 0722, 0742, 0743, 0747, 0793. Two of the defendants' affidavits taken from co-workers state: "I am familiar with James Hill and Michael Hill and the work they have performed for the Company from their commencement dates until the present time. Both James Hill and Michael Hill always have been cement bulker drivers. They have never been gravel train brokers or gravel train drivers." AR at CS 0742, 0743.

The affidavit of David Kurtz, Kurtz secretary/treasurer, states that he is familiar with and was personally involved in the negotiations of many of the CBAs at issue, defines gravel train driver as

-8-

"[driving] a truck pulling a set of trailers carrying gravel in an open container," and defines cement driver broker as "[driving] a truck pulling a set of trailers carrying powered cement." Mr. Kurtz states that the plaintiff's "job classifications during his employment included: Cement bulker driver and cement broker." AR at CS 0792-0793. Mr. Kurtz counters the plaintiff's argument that he was covered under the 1979 CBA by stating that the plaintiff was a cement hauler driver, a classification not included in Schedule A in Article 1 where the classifications are delineated; that mere employment at Kurtz and membership in Local 332 does not qualify him for benefits; and that the plaintiff worked under lease agreements with Kurtz but was not an owner-operator because he owned a tractor, which is not a transit-mix truck as defined in Article 5 of the 1982 Redi-Mix CBA. Mr. Kurtz further states that the plaintiff, "prior to 1991, was covered by lease agreements. Between 1991 and 1994, Kurtz Gravel was a party to a certain 'Brokers Contract' to which Hill was a party and working for Kurtz Gravel throughout that period." The Brokers Contract "required Kurtz Gravel to contribute to an IRA Pension Plan on behalf of the covered employees but no obligation to contribute to Central States." AR at CS 0794-0795.

Finally, Mr. Kurtz states that "Hill was never classified as a gravel train driver. He drove a tractor, pulling a cement bulker, not a gravel train. He hauled cement for redi-mix concrete and pulled cement bulk trains, but did not haul stone, gravel trains or drive a flatbed truck." AR at CS 0796. All three of the defendants' affiants were fully sworn, worked for Kurtz, and claim to have personal knowledge pertaining to the job classification of gravel train driver and cement hauler driver.

One might argue that the defendants' evidence is of better quality and quantity than that of the plaintiff's evidence, especially when the plaintiff's case is compared to *Glascoe*. That

observation is unnecessary, however, under the applicable standard of review in this case. It is enough to say, as the magistrate judge found, that the plan administrator's decision was supported by substantial evidence. Given the competing evidence, the Court concludes that the decision of the Central States Board of Trustees that the plaintiff was not a covered employee until the 1995 CBA was rational in light of the plan's provisions." *Smith*, 129 F.3d at 865. The magistrate judge, therefore, correctly concluded that the defendants' decision was neither arbitrary nor capricious.

B.

The plaintiff's second objection to the magistrate judge's report and recommendation raises the argument that the defendants' affidavits do not satisfy Federal Rule of Civil Procedure 56(e) because there is no specification that the affidavits were made on personal knowledge or that the affiants were competent to testify on the matters stated therein. He cites *Dole v. Elliot Travel & Tours, Inc.,* 942 F.2d 962, 968 (6th Cir. 1991), in support of that argument. The plaintiff also argues that two of the affidavits relied upon by the defendants are unreliable because they are exactly the same except for the names on them, the affidavits' assertions lack documentation or support, and neither of the affiants personally observed the plaintiff performing his work duties.

The plaintiff's objection is misplaced. The Sixth Circuit has stated that Rule 56 does not govern the adjudication of ERISA benefits cases. *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609, 618-619 (6th Cir. 1998). Therefore, affidavits submitted to plan administrators need not conform to the requirements of Rule 56(e). *Dole* is not relevant authority because that case dealt with affidavits filed in court under Rule 56.

In addition, the affidavits supplied by the defendants all were made on oath and each of the co-workers averred that he was familiar with the plaintiff and the work that he had performed. Both

of the co-workers had been employed with Kurtz longer than the plaintiff. AR at CS 0742, 0743. The affidavit of the Kurtz corporate officer was based on his personal knowledge of Kurtz CBAs and business records, as established by his affidavit. AR at CS 0792. There is no reason to conclude that the Board of Trustees acted unreasonably when it relied on the evidence furnished through these affidavits.

Finally, the plaintiff claims the magistrate judge ignored 300 pages of material attached to his affidavit. That documentation consists mostly of the different CBAs and sheds little light on the plaintiff's claim. There is no error in the magistrate judge's review of the evidence in the administrative record.

### III.

After conducting a *de novo* review of the record in light of the plaintiff's objections, the Court is satisfied that the magistrate judge properly evaluated the record and applied the correct law to the pending motions.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [02-10290 dkt # 81; 03-10247 dkt #50], is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections to the report and recommendation [02-10290 dkt # 82; 03-10247 dkt #51] are **OVERRULED**.

It is further **ORDERED** that the defendants' motions to affirm the decision of the plan administrator [02-10290 dkt #s 70, 72; 03-10247 dkt #s 39, 41] are **GRANTED**.

It is further **ORDERED** that the plaintiff's motion to reverse the plan administrator's decision or remand [02-10290 dkt # 71; 03-10247 dkt #40] is **DENIED**.

It is further **ORDERED** that the defendants' motion for leave to file a sur-reply brief [03-10247 dkt #47] is **DENIED** as moot.

It is further **ORDERED** that the complaints in the consolidated cases are **DISMISSED WITH PREJUDICE**.

                                              s/David M. Lawson
                                              DAVID M. LAWSON
                                              United States District Judge

Dated: September 21, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 21, 2006.

                              s/Felicia Moses
                              Case Manager